IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 13-10908 (ESL) |
| DANIEL ROMAN-PEREZ<br>CYNTHIA GONZALEZ-ARROYO | CHAPTER 13 |
| Debtors | |
| DANIEL ROMAN-PEREZ<br>CYNTHIA GONZALEZ-ARROYO<br>    Plaintiffs/Debtors | ADV. PROC. NO. 14-00155 (ESL) |
| vs. | |
| OPERATING PARTNERS CO. LLC;<br>*ET AL.* | |
| Defendants | |

OPINION AND ORDER

This adversary proceeding is before the court upon the *Motion Requesting Partial Summary Judgment* (the "*Motion for Partial Summary Judgment*, Docket No. 15) filed by Daniel Román Pérez and Cynthia González Arroyo (the "Plaintiffs" or the "Debtors") alleging that defendant Operating Partners Co. LLC (the "Defendant" or "Operating Partners") violated the automatic stay provision in 11 U.S.C. § 362(a) and the Fair Debt Collection Practices Act ("FDCPA") by attempting to collect amounts not permitted by law, and seek a determination on the Defendant's liability for actual damages, attorneys' fees and punitive damages. Also before the court is the *Defendant's Opposition to Summary Judgment* (Docket No. 27) contending that there is no evidence to ascertain that Operating Partners willfully violated the automatic stay and that there was no intent or willful action on their part. For the reasons set forth below, the Plaintiffs' *Motion for Partial Summary Judgment* is hereby granted in part and denied in part.

Factual and Procedural Background

In 2011, Banco Bilbao Vizcaya Argentaria Puerto Rico ("BBVA") filed a *Complaint* against the Debtors for collection of monies before the Puerto Rico Court of First Instance, Superior Court of Vega Alta, Case No. CD2011-382 (the "PR Court of First Instance"). The

claimed debts were comprised of personal and credit cards loans. On February 15, 2012, the PR Court of First Instance entered a judgment against the Debtors.

BBVA transferred to Oriental Bank certain credits, including the Plaintiffs' credit card and personal loans. On July 10, 2013, Oriental Bank transferred those credits and loans to PR Acquisitions, which subsequently assigned such claims for collection to Operating Partners, a debt collector. See Claims Register Nos. 1-1 and 2-1 and Lead Case Docket Nos. 30 and 32.

On December 30, 2013, the Plaintiffs filed their Chapter 13 bankruptcy petition. See Lead Case Docket No. 1.

On January 3, 2014, PR Acquisitions filed Proof of Claims Nos. 1-1 and 2-1. PR Acquisitions and Operating Partners were included in the Creditor Matrix List on January 27, 2014. See Lead Case Docket No. 12, p. 51-52. PR Acquisitions acknowledges that it was duly notified and knew of the filing of the bankruptcy petition. See Docket No. 25-1, p. 2, ¶ 8.

On January 16, 2014, Operating Partners, as agent of PR Acquisitions, filed a motion to stay the proceedings at the PR Court of First Instance in light of the bankruptcy petition filed by the Plaintiffs. See Docket No. 25-2, p. 1, ¶¶ 1-2. In that same motion, Operating Partners' attorneys, Rodriguez-Carde Law Offices, P.S.C., through Attorney Yarymar González Carrasquillo, also sought leave to withdraw as legal counsel because their client had so requested it. See Docket No. 25-2, p. 1, ¶ 4.

On January 17, 2014, the Debtors also filed a motion to stay the proceedings before the PR Court of First Instance in light of the filing of their bankruptcy petition. See Docket No. 25-3.

On January 22, 2014, the PR Court of First Instance issued an *Order*[1] granting the motion to stay proceedings filed by the Plaintiffs in the instant case. The PR Court of First Instance did not rule upon the leave to withdraw its legal counsel. See Docket No. 25-4.

On February 11, 2014, Operating Partners, as agent of PR Acquisitions, filed before the PR Court of First Instance the following motions: (1) *Motion to Request Substitution of Plaintiff*

---

[1] The *Order* was notified to the parties on February 5, 2014. See Docket No. 25-3, p. 1.

informing that it had become the agent of PR Acquisitions to pursue that case; and (2) *Motion Soliciting Order for Execution* of the judgment previously entered in that case. See Docket Nos. 16-1 and 16-2.

On June 23, 2014, the Debtors filed a *Complaint* against Operating Partners that initiated the instant adversary proceeding (Docket No. 1) and on August 13, 2014, Operating Partners filed its *Answer to Complaint* (Docket No. 6).

On October 9, 2014, the Plaintiffs moved for partial summary judgment for the court to determine that Operating Partners violated: (a) the automatic stay in 11 U.S.C. § 362; (b) 15 U.S.C. § 1692f(1) for attempting to collect amounts not permitted by law using unconscionable methods; (c) 15 U.S.C. § 1692(e)(2) and (10) by falsely representing the character amount or legal status of the debt and using false representations or deceptive means to collect or attempt to collect a debt; and (d) 15 U.S.C. § 1692d by using conduct which has the consequence of harassing, oppressing or abusing the consumer since no judgment can be executed while under the protection of the automatic stay. They seek actual and punitive damages and attorneys' fees.

On October 17, 2014, the court entered an *Order* for the Defendant to "show cause within twenty one (21) days why partial summary judgment should not be entered in favor of plaintiff[s]" (Docket No. 22).

On November 7, 2014, the Defendant filed an *Opposition to Summary Judgment* (Docket Nos. 25, 27 and 28)[2] asserting that "Plaintiffs have no evidence to ascertain that Operating Partners' [*sic*] willfully violated the automatic stay" but rather "it was Operating Partners the first party to inform the [PR Court of First Instance] that a bankruptcy proceeding had commenced and was the first to request the case to be stayed. In addition, counsel had requested withdrawal of its legal representation, which was granted by the court. Therefore, there was no reason for this attorney to pursue a case where she had already informed about the bankruptcy situation, requested stay of proceedings and then asked to be relieved from duty.

---

[2] The Defendant also filed a *Motion to File Documents in Spanish* (Docket No. 26). For the sake of judicial economy the court will consider the documents, but if an appeal should be taken, these documents will have to be offered with a translation.

Clearly a clerical error was made, which in any case was a moot action because the [PR Court of First Instance] had entered an order closing the case" (Docket No. 27, p. 3).  It further contends that the "filing of the subsequent motions by an attorney that had requested withdrawal of the case, and granted by the court, was not made deliberately or with the intention to violate the automatic stay.  It was an inadvertent act, a clerical mistake, a document that had remained on file without a date which was later stamped when it was erroneously sent" (Docket No. 27, pp. 5-6).

On November 7, 2014, the Plaintiffs filed a *Motion Requesting the Court Takes Judicial Notice* of the fact that "Operating Partners did nothing nor filed any motion to amend its illegal request", referring to the last motions it filed before the PR Court of First Instance (Docket No. 29, p. 2, ¶ g.

On November 10, 2014, Operating Partners filed a *Leave to File Unsworn Declaration* of Attorney Yarymar González Carrasquillo, who had represented it before the PR Court of First Instance, attaching the following *Unsworn Declaration Under Penalty of Perjury*:

I, Yarymar Gonzalez, of legal age, attorney for Operating Partners Co., under penalty of perjury declare as follows:

1.	I represented Operating Partners in a collection case against Mr. Daniel Roman Perez and Cynthia Gonzalez, in the Court of First Instance of Vega Baja, Puerto Rico, case no. CD2011 382.  This case was originally filed by Oriental Bank against Mr. Roman and Mrs. Gonzalez.

2.	Operating Partners acquired the rights to pursue this collection case and I immediately filed a motion on January 14, 2014, informing the court that defendants had filed a bankruptcy petition, reason for which I requested stay of all proceedings.  It should be noted that on said motion I did not specify that Operating Partners was a new party to the case nor I requested leave to substitute party.

3.	Since the court had no knowledge of Operating Partner's substitution, I filed a motion on February 11[, 2014] to request and inform of such substitution.  However, by clerical mistake on that same day a motion requesting execution of judgment that had already been drafted before my knowledge of the automatic stay, was also filed.

4.	The filing of this motion of execution of judgment was not made intentionally since I was fully aware of the automatic stay, considering the

fact that I had previously requested: the court weeks before to stay all proceedings. In fact, the Court obliged my request and entered an Order to close the case.

5. I declare that the filing of these subsequent motions had no intention of violating the automatic stay of debtors. These motions were notified directly to Mr. Daniel Roman and not an attorney because Operating Partners was never notified by Mr. Roman's counsel, Mr. Juan M. Suarez Cobo, when their motions were filed. Please take judicial notice of Mr. Juan M. Suarez Cobo's motions where [*sic*] all were sent to a prior attorney that had requested withdrawal months before and even though such request had been granted by the court.

**I, Yarymar Gonzalez Carrasquillo, of legal age, pursuant to 28 U.S.C. §174~, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Executed on this 10th day of November 2014 in San Juan, Puerto Rico.

Docket No. 30-1 (original bold).

Jurisdiction

The jurisdiction of bankruptcy courts is created and limited by statute. See Celotex Corp. v. Edwards, 514 U.S. 300, 307, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995). "[A] court has an obligation to inquire *sua sponte* into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting." White v. Gittens, 121 F.3d 803, 806 (1st Cir. 1997). Also see In re Sheridan, 362 F.3d 96, 100 (1st Cir. 2004) ("courts are duty-bound to inquire, *sua sponte*, even absent objection by any party" into the question of jurisdiction); McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004) ("It is black-letter law that a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction.") Accordingly, jurisdictional issues may be raised by the court *sua sponte*. See Fed. R. Civ. P. 12(h)(3), applicable in bankruptcy adversary proceedings through Fed. R. Bankr. P. 7012(b); In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988) ("a court has an obligation to inquire *sua sponte* into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting"); Goldsmith v. Massad (In re Fiorillo), 494 B.R. 119, 142 (Bankr. D. Ma. 2013) (bankruptcy courts are "obligated to determine whether and to what extent [they] have jurisdiction to hear

and determine all counts of the complaints."); Feliciano v. DuBois, 846 F. Supp. 1033, 1041 (D. Mass. 1994) ("a court always has an obligation to consider, even on its own initiative as well as on motion of an opposing party, whether it has subject matter jurisdiction"); County Schools, Inc. v. United States Department of Education (In re County Schools), 163 B.R. 424, 426 (Bankr. D. Conn. 1994) (a court may raise jurisdiction issues *sua sponte*); Trager v. Internal Revenue Service (In re North Star Contracting Corp.), 146 B.R. 514, 518 (Bankr. S.D.N.Y. 1992) (same); In re Perry, 391 F.3d 282, 284-285 (1st Cir. 2004) (requesting, *sua sponte*, supplemental briefing on a jurisdictional issue). "No matter how tantalizing a problem may be, a federal [] court cannot scratch intellectual itches unless it has jurisdiction to reach them." Director, OWCP v. Bath Iron Works Corp., 853 F.2d 11, 13 (1st Cir. 1988).

Bankruptcy courts have subject matter jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Also see 28 U.S.C. § 157(b)(1). U.S. District Courts may, in turn, refer "any or all proceedings arising under title 11 or arising in or 'related to' a case under title 11 ... to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Section 157 of the U.S. Judicial Code distinguishes between core proceedings and non-core proceedings. "It is the bankruptcy court's responsibility to determine whether each claim before it is core or non-core." Executive Benefits Ins. Agency v. Arkison, 134 S.Ct. 2165, 2171 (2014). "A core proceeding, for bankruptcy jurisdictional purposes, is an action that has as its foundation the creation, recognition, or adjudication of rights that would not exist independent of a bankruptcy environment." In re Med. Educ. & Health Servs., Inc., 459 B.R. 527, 545 (Bankr. D.P.R. 2011) (citations and quotations omitted). A non-core proceeding has a "life of its own in either state or federal common law or statute independent of the federal bankruptcy laws." Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582 (2nd Cir. 1983). Also see Scotland Guard Servs. v. Autoridad de Energia Electrica (In re Scotland Guard Servs., Inc.), 179 B.R. 764, 767 (Bankr. D.P.R. 1993) (non-core proceedings are those that "would survive outside of bankruptcy"). The U.S. Court of Appeals for the First Circuit (the "First Circuit") has defined non-core proceedings as claims that did not arise in the core bankruptcy function of

adjudicating debtor-creditor rights. In re Arnold Print Works v. Apkin, 815 F.2d 165, 167 (1st Cir. 1987). Also see In re Caribbean Petroleum Corp., 443 B.R. at 566 (discussing the difference between core and non-core proceedings).

A bankruptcy court may hear and finally determine all core bankruptcy proceedings without the parties' consent. See 28 U.S.C. § 157(b). In non-core "related to" proceedings "--*i.e.*, proceedings that are 'not core' but are otherwise related to a case under title 11-- [28 U.S.C. § 157(c)] authorizes a bankruptcy court to hear the proceeding, and then submit proposed findings of fact and conclusions of law to the district court. The district court must then review those proposed findings and conclusions *de novo* and enter any final orders or judgments. There is one statutory exception to this rule: if all parties 'consent', the statute permits the bankruptcy judge to hear and determine and to enter appropriate orders and judgments as if the proceeding were core." Executive Benefits Ins. Agency v. Arkison, 134 S.Ct. at 2172. In the instant case, the parties have consented to the entry of a final order by the bankruptcy judge[3].

In regards to the claim for violation of the automatic stay, the court has jurisdiction over the instant adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b) and Fed. R. Bankr. P. 7001(1). A willful violation claim under 11 U.S.C. § 362 "*must* be brought in the bankruptcy court, rather than in the district court, which only has appellate jurisdiction over bankruptcy cases." Eastern Equipment & Services Corp. v. Factory Point National Bank,

---

[3] In ¶¶ 4-5 of the *Complaint* (Docket No. 1, p. 3), the Plaintiffs aver the following jurisdictional pleadings:

> 4. Jurisdiction is invoked under 28 U.S.C. § 157 (c)(1) & (2), § 1334 & 1337. [] If this action has any noncore elements, plaintiffs hereby express their consent to the entry of final judgment by a Bankruptcy Judge.

> 5. This Court has supplemental jurisdiction to hear all state law claims pursuant to Section 1367 of Title 28 of the United States Code. This Court also has jurisdiction to hear the Fair Debt Collection Practices Act violations pursuant to Section 1692 of Title 15 of the United States Code; thus, federal subject matter jurisdiction is properly founded upon Section 1331 of Title 28 of the United States Code.

The Defendant admitted and consented to the foregoing in ¶¶ 4-5 of its *Answer to Complaint* (Docket No.6, p. 2):

> 4. Allegation number four (4) is admitted as to the provisions of law.

> 5. Allegation number five (5) jurisdictional allegations are limitedly admitted, exclusively to "Federal Questions".

Bennington, 236 F.3d 117, 121 (2nd Cir. 2001) (italics in original). Also see Davis v. Courington (In re Davis), 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995) ("The bankruptcy court ha[s] subject-matter jurisdiction over all claims alleging willful violation of the automatic stay."); Halas v. Platek, 239 B.R. 784, 792 (N.D. Ill. 1999) ("[A] Section 362[k] request for sanctions is within the exclusive jurisdiction of the bankruptcy court under § 1334(a)"); Otero-Rivera v. Lake Berkley Resort Master Ass'n (In re Otero-Rivera), 511 B.R. 6, 14 (Bankr. D.P.R. 2014).

Notwithstanding, courts are divided as to whether a bankruptcy court may adjudicate claims under the FDCPA. For instance, in Goldstein v. Marine Midland Bank (In re Goldstein), 201 B.R. 1 (Bankr. D. Me. 1996), the debtor filed an adversary proceeding to claim damages for alleged violations to the automatic stay, the discharge injunction, post-petition violations of the FDCPA, sanctions under 28 U.S.C. § 1927 and state tort law. The court recognized that it would be logical to argue that "since the bankruptcy court has jurisdiction over the § 362[k] and § 524(a) claims, and since the F.D.C.P.A. and tort claims arise from the same 'transaction' [and] involve the same 'operative facts'", it "can, and should, hear them" because "[i]t would be convenient and economical to resolve all claims in one forum". Id. at 6. Notwithstanding, the court found that such "judicial economy itself does not justify jurisdiction" and concluded that it could not exercise supplemental jurisdiction under 28 U.S.C. § 1367 and dismissed the FDCPA claims for lack of subject matter jurisdiction. Id. at 6-9. Similarly, in Martinez Arzuaga v. Quantum, Servicing Corp. (In re Martinez-Arzuaga), 2012 Bankr. LEXIS 1443, 2012 WL 1120673 (Bankr. D.P.R. 2012), the debtors filed an adversary proceeding for alleged damages and violations of the discharge injunction pursuant to 11 U.S.C. § 524 and the FDCPA. The court found that an "FDCPA claim does not 'arise under' or 'arise in' a Title 11 case, nor is it 'related to' a Title 11 case because win, lose or draw, the outcome of Plaintiffs' FDCPA claim cannot conceivably have any effect on the bankruptcy estate because the Plan has been completed and because the discharge has been entered. An FDCPA claim regarding post-discharge conduct that does not impact in any way the bankruptcy estate does not fall under Title 11's jurisdictional umbrella because any remedies gained under the FDCPA inure to the

plaintiff and not to the bankruptcy estate." In re Martinez Arzuaga, 2012 Bankr. LEXIS 1443 at *13, 2012 WL 1120673 at *5.

Other bankruptcy courts, however, have found that there is subject-matter jurisdiction to consider FDCPA violations under the "related to" provision of 28 U.S.C. § 1334(b) in an adversary proceedings for discharge violation damages. For example, in Eastman v. Baker Recovery Servs. (In re Eastman), 512 B.R. 832, 838 (Bankr. W.D. Tex. 2009), the U.S. Bankruptcy Court for the Western District of Texas ruled that the "FDCPA claim is certainly a matter that is, as a matter of plain English, 'related to' a bankruptcy case. It arises from the **same set of facts** that give rise to the violation of discharge cause of action. And the actual language of the statute does not limit its reach to open bankruptcy cases (else it would say the bankruptcy case). Nor does the statutory language contain any language limiting its reach to estates under active administration. By the plain language of the statute, so long as a matter is 'related' --whatever that term connotes-- to 'a bankruptcy case,' it falls within the federal courts' bankruptcy subject matter jurisdiction." (Emphasis added.) The Eastman court also considered that the "selfsame facts make out a case for violation of the FDCPA. There would be no judicial efficiency in requiring the beneficiary of a judgment finding the defendant liable for violating the discharge injunction to pursue a separate lawsuit in state or federal court in order to secure a money judgment against the defendant. Thus, the court concludes, under the reasoning of [In re] Morrison, [553 F.3d 473 (5th Cir. 2009)], that it has the requisite subject matter jurisdiction to entertain the FDCPA cause of action." 512 B.R. at 839. In so deciding, "the court [was] well aware of its prior holding to the contrary in Mahoney v. Wash. Mut., Inc. (In re Mahoney), 368 B.R. 579, 583 (Bankr. W.D. Tex. 2007)", and "of its bench ruling to the contrary at the conclusion of the hearing on the motion." Id., fn. 5.

In re Eastman, however, has been criticized. In Marshall v. PNC Bank, N.A. (In re Marshall), 491 B.R. 217, 228 (Bankr. S.D. Ohio 2012), the court considered Eastman but ruled instead that the "fact that the Debtor's FDCPA Claim and her claim for violation of the

discharge injunction share a common factual nexus is not sufficient to establish jurisdiction in this Court". The Marshall court further determined that:

> [t]he appropriate test to determine whether this Court has "related to" jurisdiction over the Debtor's FDCPA Claim is whether the outcome of the Debtor's FDCPA Claim could have any conceivable effect on the Debtor's bankruptcy estate. See Michigan Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.), 930 F.2d 1132, 1144 (6th Cir. 1991) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." (quoting Pacor, Inc. v. Higgins (In re Pacor), 743 F.2d 984, 994 (3rd Cir. 1984) (internal quotation marks omitted)).

In re Marshall, 491 B.R. at 230.

In In re Pacor, *supra*, the U.S Court of Appeals for the Third Circuit (the "Third Circuit") established a standard for determining whether a proceeding is "related to" the bankruptcy. The main consideration of the test is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." 743 F.2d at 994, overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 116 S. Ct. 494, 133 L. Ed. 2d 461 (1995). Hence, an "action is 'related to' bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." Id. at 994. The First Circuit and various courts within it have recognized and adopted this standard. See In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991); In re Santa Clara County Child Care Consortium, 223 B.R. 40, 45 (B.A.P. 1st Cir. 1998) (providing a lengthy list of First Circuit district and bankruptcy courts adopting the Pacor test); In re Caribbean Petroleum Corp., 443 B.R. 560, 564-565 (Bankr. D.P.R. 2010); In re Remington Dev. Group, Inc., 180 B.R. 365, 368 (Bankr. D.R.I. 1995).

In re Martinez-Arzuaga, *supra*, also followed In re Pacor, *supra*, inasmuch as the "FDCPA claim regarding post-discharge conduct that does not impact in any way the bankruptcy estate does not fall under Title 11's jurisdictional umbrella because any remedies gained under the FDCPA inure to the plaintiff and not to the bankruptcy estate. This is the situation in the case at bar. Plaintiffs' cause of action under FDCPA would have no effect

-10-

whatsoever in the bankruptcy estate and, even if they successfully prosecute said claim, any recovery would be for their personal benefit, not their estate's.  No nexus exists between the determination of this controversy and the administration of the estate."  2012 Bankr. LEXIS 1443 at **13-14, 2012 WL 1120673 at *5.

In the instant case, however, the Plaintiffs' FDCPA claims stem from the violation to the automatic stay.  In other words, without the Bankruptcy Code, their FDCPA claims would not exist.  Moreover, and contrary to In re Martinez-Arzuaga, *supra*, the Debtors in the lead bankruptcy case have not yet been discharged as the payments under the confirmed *Chapter 13 Plan* have not been completed; and the instant adversary proceeding is for the recovery of damages for a violation of the automatic stay, not a violation of the discharge injunction.  Hence, an award for damages in the instant case would benefit the bankruptcy estate pursuant to 11 U.S.C. § 1306(a)(1).  See Crouser v. BAC Home Loans Servicing, L.P. (In re Crouser), 476 B.R. 340 (Bankr. S.D. Ga. 2012) (ruling that the proceeds from a settlement for damages under 11 U.S.C. § 362(k) are part of the bankruptcy estate and must be turned over to the trustee).  As stated by the Third Circuit, "[t]o decide the [Plaintiffs'] FDCPA claim, the [] court would first need to address issues typically decided by a bankruptcy court."  Simon v. FIA Card Servs., N.A., 732 F.3d 259, 272 (3rd Cir. 2013).  Therefore, the court finds that the FDCPA claims in the instant case are "related to" the bankruptcy case, and thus, the court can exert subject-jurisdiction over them.  In addition, the parties have consented to the entry of a final order by this court.

The court also considers that the U.S. Courts of Appeals for several circuits have impliedly asserted jurisdiction over the FDCPA in bankruptcy proceedings and have examined its interaction with the Bankruptcy Code.  See *e.g.* Walls v. Wells Fargo Bank, N.A., *infra*; Randolph v. IMBS, Inc., *infra*; Crawford v. LVNV Funding, LLC, *infra*.

Applicable Law and Analysis

*(A)     Standard for Partial Summary Judgment*

Fed. R. Civ. P. 56 is applicable to adversary proceedings by Fed. R. Bankr. P. 7056, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law".  See also In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved."  10A Wright, Miller & Kane, Federal Practice and Procedure 3d § 2712 at 198.  "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried."  Id. at 202-203.  Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.  Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. at 322.  The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute thereby requiring deference to the finder of fact.  Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation.  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976).  When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the

nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. See Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. See Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-1561 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. See López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. See Celotex, 477 U.S. at 325; Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987). See also Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. Adickes, 398 U.S. at 159.

Fed. R. Civ. P. 56 was extensively rewritten in 2010. See 10B Wright, Miller & Krane Federal Practice & Procedure: Civil 3d § 2737. Amended subsection (a) of Fed. R. Civ. P. 56 now includes express authority for judgment on less than the entire case denominating it in its subsection title as "Partial Summary Judgment", which allows summary judgment "upon all or any part" of a claim or defense by any party.

Pursuant to Fed. R. Civ. P. 56(g), even if summary judgment is not entirely granted, the court has the authority to determine the material facts which are genuinely not in dispute, and establish those facts as undisputed for trial. "The purpose of the rule is twofold: to salvage some of the judicial effort involved in the denial of a motion for summary judgment and to streamline the litigation process by narrowing the triable issues." D'Iorio v. Winebow, Inc., 2014 U.S. Dist. LEXIS 177464 at *51 (E.D.N.Y. 2014), quoting Guilani v. Bak (In re Bak), 2013 Bankr. LEXIS 713 at *9, 2013 WL 653073 at *3 (Bankr. D. Conn. 2013) (denying motion for summary judgment but establishing through a Fed. R. Civ. P. 56(g) order the legal framework of the adversary proceeding). The decision of the court to enter an order limiting relief under Fed. R. Civ. P. 56(g) "is a matter of discretion." In re Bak, 2013 Bankr. LEXIS 713 at **9-10. Moreover, when confronted with a motion for summary judgment, a court "should state the record the reasons for granting or denying the motion". Fed. R. Civ. P. 56(a).

In the instant case, the uncontested facts are supported by the admissions to the pleadings and the uncontested documents in the record.

*(B)    The Automatic Stay*

The automatic stay provision is one of the fundamental debtor protections in the Bankruptcy Code. It gives the debtor a "breathing spell" from creditors and stops all collection efforts, all harassment, and all foreclosure actions. H.R. Rep. No. 95-595, 95th Cong. 1st Sess. 340-342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840, 6296-97. Also see ICC v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991); In re Smith Corset Shops, Inc., 696 F.2d 971, 977 (1st Cir. 1982). "It allows the debtor to attempt a repayment or reorganization plan or simply be relieved of the financial

pressures that drove him into bankruptcy." Id. at 977. Section 362 of the Bankruptcy Code provides that upon filing for bankruptcy, a debtor is immediately protected by an automatic stay that prohibits, *inter alia,* the "continuation ... or other action or proceeding against the debtor that was or could have been commenced before the [bankruptcy petition] or to recover a claim against the debtor that arose before the commencement of the case under this title" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case..." 11 U.S.C. § 362(a)(1) and (6). "This respite enables debtors to resolve their debts in a more orderly fashion and at the same time safeguards their creditors by preventing different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets." Soares v. Brockton Credit Union (In re Soares), 107 F.3d 969, 975 (1st Cir. 1997) (citations omitted). "Section 362(a)(6) is intended to prevent creditor harassment of the debtor in attempting to collect pre-petition debts. The conduct prohibited ranges from that of an informal nature, such as by telephone contact or by dunning letters, to more formal judicial and administrative proceedings that are also stayed under subsection (a)(1)." Alan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 362.03[8][a] (16th ed. 2015).

*(C)     Violation of the Automatic Stay*

"The automatic stay imposes on non-debtor parties an affirmative duty of compliance." Whitman-Nieves v. P.R. Fed. Credit Union (In re Whitman-Nieves), 519 B.R. 1, 8 (Bankr. D.P.R. 2014), quoting Otero-López v. Dep't of Treasury of P.R. (In re Otero-López), 492 B.R. 595, 607 (Bankr. D.P.R. 2013), and Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir. 2010). To ensure compliance of the automatic stay, Section 362(k) of the Bankruptcy Code provides the necessary means to redress its violation: "an individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages". 11 U.S.C. § 362(k)(1). "A debtor seeking damages under this section bears the burden of proving by a preponderance of the evidence the following three elements: (1) that a violation of the automatic stay occurred;

(2) that the violation was willfully committed; and (3) that the debtor suffered damages as a result of the violation." Slabicki v. Gleason (In re Slabicki), 466 B.R. 572, 577-578 (B.A.P. 1st Cir. 2012), citing In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009). "A willful violation does not require a specific intent to violate the automatic stay." In re Otero, 492 B.R. at 607. "The standard for a willful violation of the automatic stay ... is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortgage Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999). "The debtor has the burden of providing the creditor with actual notice. Once the creditor receives actual notice, the burden shifts to the creditor to prevent violations of the automatic stay." Id. "In cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." Id. "A violation may also be willful if the creditor's original action in violation of the stay occurred without notice of the bankruptcy filing, but it failed to take prompt action to remedy the violation after receipt of notice." Chapter 13 Practice & Procedure § 5B:6. Also see In re Abrams, 127 B.R. 239, 243-244 (B.A.P. 9th Cir. 1991); In re Combs, 2006 Bankr. LEXIS 3569 at **5-6, 2006 WL 6591825 at *2 (Bankr. N.D. Ga. 2006); In re Smith, 180 B.R. 311 (Bankr. N.D. Ga. 1995) (failure to vacate judgment entered post-petition constituted a willful violation of the automatic stay); Commercial Credit Corp. v. Reed, 154 B.R. 471, 476 (E.D. Tex. 1993) ("[A] creditor must act immediately to restore the status quo once it learns that it has violated the stay."); In re Wariner, 16 B.R. 216 (Bankr. D. Tex. 1981) ("A creditor has an affirmative duty to return the property and restore the status quo once it learns its actions violated the stay."); In re Miller, 10 B.R. 778 (Bankr. D. Md. 1981) (creditor has an affirmative obligation to return vehicle repossessed post-petition; failure to do so constituted a willful stay violation and supported an award of damages); In re Taylor, 190 B.R. 459, 461 (Bankr. S.D. Fla. 1995) ("once notice was given [to creditor] that the petition relief had been filed, [he] had an affirmative duty to undo the technical violation).

In the instant case, Operating Partners acknowledged having due notice of the filing of the Debtor's bankruptcy petition. See Docket No. 25-1, ¶ 8. Therefore, when Attorney

Yarymar González Carrasquillo signed and filed the *Motion Soliciting Order* before the PR Court of First Instance on February 11, 2014 requesting the execution of the judgment of pre-petition debts on behalf of Operating Reports (Docket No. 16-2, Exhibit 1), the Defendant violated the automatic stay pursuant to 11 U.S.C. § 362(a)(1) and (6). The evidence does not show that when Attorney Yarymar González Carrasquillo signed and filed the *Motion Soliciting Order* (Docket No. 16-2, Exhibit 1), her request to be withdrawn as Operating Partner's legal counsel had been granted by the PR Court of First Instance. Thus, as stated in <u>Otero Rivera v. Lake Berkley Resort Master Ass'n (In re Rivera)</u>, 2014 Bankr. LEXIS 4976 at **6-7 (Bankr. D.P.R. 2014):

> "Attorneys act for their clients, and the neglect of an attorney acting within the scope of his or her authority is attributable to the client." <u>Nansamba v. North Shore Med. Ctr., Inc.</u>, 727 F.3d at 38, citing <u>Thibeault v. Square D Co.</u>, 960 F.2d 239, 246 (1st Cir. 1992) (rejecting argument that attorney's sins should not be visited upon client); <u>Damiani v. R.I. Hosp.</u>, 704 F.2d 12, 16 (1st Cir. 1983) (same). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'" <u>Damiani v. R.I. Hosp.</u>, 704 F.2d at 16, quoting <u>Smith v. Ayer</u>, 101 U.S. 320, 326 (1880). "[K]eeping a suit alive 'merely because [defendants] should not be penalized for the omissions of [their] own attorney[s] would be visiting the sins of the [defendants'] lawyer upon the [plaintiff].'" <u>Damiani v. R.I. Hosp.</u>, 704 F.2d at 17, quoting <u>Link v. Wabash Railroad Co.</u>, 370 U.S. 626, 634 n. 10 (1962). Also see <u>Corchado v. Puerto Rico Marine Management, Inc.</u>, 665 F.2d 410, 413 (1st Cir. 1981), <u>cert. denied</u>, 459 U.S. 826, 103 S. Ct. 60, 74 L. Ed. 2d 63 (1982); <u>Pease v. Peters</u>, 550 F.2d 698, 701 (1st Cir. 1977).

Ms. González Carasquillo's statement in her *Unsworn Declaration Under Penalty of Perjury* that such the filing of such motion "was not made intentionally since she was fully aware of the automatic stay" (Docket No. 30-1, ¶ 4) further supports the violation. "A willful violation does not require a specific intent to violate the automatic stay." <u>Fleet Mortg. Group v. Kaneb</u>, 196 F.3d at 269. The court further finds that the violation was willful because "[i]n cases where the creditor received actual notice of the automatic stay, courts must presume that the violation was deliberate." <u>Id.</u> The court also weighs that the Defendant did not withdraw the motion to

execute judgment before the PR Court of First Instance. Therefore, the Plaintiffs are entitled to actual damages, including costs and attorneys' fees, under 11 U.S.C. § 362(k)(1).

*(D)*       *Punitive Damages under 11 U.S.C. § 362(k)(1)*

Punitive damages are awarded under Section 362(k)(1) for violations of the automatic stay "in appropriate circumstances". 11 U.S.C. § 362(k)(1). "An award of punitive damages is properly within the discretion of the Bankruptcy Court and is a fact specific determination." In re Rosa, 313 B.R. 1, 8 (Bankr. D. Mass. 2004) (citations omitted). "While the actual intention to violate the automatic stay has no impact on the determination of whether actions are 'willful' for the purpose of determining actual damages, intentionality or reckless conduct is relevant when evaluating the propriety of punitive damages." Id. "An award of punitive damages, on the other hand, usually requires more than a mere willful violation of the automatic stay. Relevant factors courts consider when determining whether punitive damages should be awarded include: (1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor. An award of punitive damages is often limited to those cases where there is egregious, intentional misconduct." In re Seaton, 462 B.R. 582, 595 (Bankr. E.D. Va. 2011) (quotations and citations omitted). Moreover, "[i]n considering whether punitive damages are appropriate under the statutory authorization for an automatic stay violation under 11 U.S.C. § 362[k], courts have generally required a violation which occurs by way of egregious or vindictive conduct. Accordingly, whether expressed as 'egregious conduct,' 'malevolent intent,' or 'clear disregard of the bankruptcy laws,' each of these decisions appear to employ a finding of creditor conduct beyond willfulness or deliberation and more closely resembling a specific intent to violate the discharge injunction in order to assess punitive damages." Id. at 603-604, quoting Rountree v. Nunnery (In re Rountree), 448 B.R. 389, 419 (Bankr. E.D. Va. 2011)

Likewise, in confirming the bankruptcy court's denial of punitive damages under 11 U.S.C. § 362(k)(1), the U.S. Bankruptcy Appellate Panel for the Ninth Circuit in Youssef v. Union Adjustment Co. (In re Youssef), 2011 Bankr. LEXIS 886 at **18-19, 2011 WL 3298903

(B.A.P. 9th Cir. 2011), followed the reasoning of Goichman v. Bloom (In re Bloom), 875 F.2d 224, 228 (9th Cir. 1989), a case where the U.S. Court of Appeals for the Ninth Circuit observed that it has "traditionally been reluctant to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others." In approving an award for punitive damages, the Bloom court noted that the creditor had taken several steps in pending litigation after receiving formal notice that it was violating the stay and "blatantly attempted to circumvent the jurisdiction of the bankruptcy court by filing an [unjustified] motion to withdraw the reference." Id. at 228. One interpretation of the "reckless or careless disregard" standard in Bloom, therefore, was applied to a creditor's abuse of the legal process, not to the general negligence or failure in business record-keeping. In re Youssef, 2011 Bankr. LEXIS 886 at *19.

In short, "[p]unitive damages may be awarded where there has been conduct in bad faith. The type of conduct necessary for an award does not require evidence of ill or malice toward the plaintiff, but the act done by the opponent must have been done intentionally and without a justification." In re Augustino Enterprises, Inc., 13 B.R. 210, 212 (Bankr. D. Mass. 1981).

The Plaintiffs in the instant case have not alleged or demonstrated how or to what extent Operating Report's conduct was intentionally unjustified, egregious, abusive, malicious and/or in bad faith. Although the court can presume the willfulness of the Defendant's violation of the automatic stay, Fleet Mortgage Group v. Kaneb, 196 F.3d at 269, it cannot presume its maliciousness or abuse based on the record of the instant case. Therefore, the Plaintiffs' request for punitive damages is hereby denied.

*(E)* *The Bankruptcy Code and the FDCPA*

"The United States Bankruptcy Code provides a comprehensive federal system of penalties and protections to govern the orderly conduct of debtors' affairs and creditors' rights." E. Equip. & Servs. Corp. v. Factory Point Nat'l Bank, 236 F.3d 117, 120 (2nd Cir. 2001). Accordingly, "if bankruptcy occurs, the debtor's protection and remedy remain under the

-19-

Bankruptcy [Code]." Garfield v. Ocwen Loan Servicing, LLC, 2015 U.S. Dist. LEXIS 8503 at *7 (W.D.N.Y. 2015), quoting Kokoszka v. Belford, 417 U.S. 642, 651 (1974). The FDCPA's main purpose is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." Section 802(e) of the FDCPA, 11 U.S.C. § 1692(e).

The Plaintiffs allege that when Operating Partner requested the execution of the judgment before the PR Court of First Instance, it violated 15 U.S.C. §§ 1692f(1), 1692(d) and 1692(e)(2) and (10), which state as follows:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

…

15 U.S.C. § 1692f(1).

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3)1 of this Act.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 804, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d.

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(2) The false representation of --

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

…

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

11 U.S.C. § 1692e(2), 10.

Section 813 of the FDCPA establishes the following civil liability of any violation thereof:

a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of --

(1) any actual damage sustained by such person as a result of such failure;

(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

(b) In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors --

(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

(2) in any class action under subsection (a)(2)(B), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

(c) A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

(d) An action to enforce any liability created by this title may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

(e) No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Commission, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1692l.

"In order to prevail on an FDCPA claim, plaintiff must prove that (1) she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA[4], and (3) defendants have engaged in an act or omission prohibited by the FDCPA." Som v. Daniels Law Offices, 573 F. Supp. 2d 349, 356 (D. Mass. 2008).

The query in the instant case further translates into whether the remedies afforded in the Bankruptcy Code preclude the applicability of the FDCPA when the remedies sought stem from a violation to the former. "Courts that have addressed the issue of preclusion of FDCPA claims

---

[4] FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another …" 15. U.S.C. § 1692a(6). The U.S. Supreme Court has held that a "debt collector" includes an attorney who "'regularly' engage[s] in consumer-debt-collection activity, even when that activity consists of litigation." Heintz v. Jenkins, 514 U.S. 291, 299 (1995). Also see Simon v. FIA Card Servs., N.A., 732 F.3d at 265.

-22-

based on an alleged violation of the bankruptcy [automatic] stay or discharge injunction are divided." Garfield v. Ocwen Loan Servicing, LLC, 2015 U.S. Dist. LEXIS 8503 at \*10. Also see Simon v. FIA Card Servs., N.A., 732 F.3d at 271, fn. 7, where the Third Circuit made a comparative list of decisions by U.S. District Courts and Bankruptcy Courts finding that FDCPA claims were not precluded by the Bankruptcy Code versus the decisions finding that they the Bankruptcy Code precluded FDCPA claims.

In Walls v. Wells Fargo Bank, N.A., 276 F.3d 502 (9th Cir. 2002), the U.S. Court of Appeals for the Ninth Circuit (the "Ninth Circuit") was faced with a class action brought against Wells Fargo Bank under Sections 105 and 524 the Bankruptcy Code and the FDCPA. The plaintiffs-debtors asserted that the Bank violated the discharge injunction under 11 U.S.C. § 524 and Section 808 of the FDCPA, 15 U.S.C. § 1692f. The focus of the FDCPA claim was on Wells Fargo's attempts to collect discharged debts, rather than on any communications with represented persons (see e.g. 15 U.S.C. § 1692(c)). The Ninth Circuit ruled that "[b]ecause [the plaintiffs'] remedy for violation of § 524 lies in the Bankruptcy Code, [their] simultaneous FDCPA claim is precluded." 276 F. 3d at 511.

The U.S. Court of Appeals for the Second Circuit (the "Second Circuit") adopted a similar posture: "[t]he FDCPA is designed to protect defenseless debtors and to give them remedies against abuse by creditors … [t]here is no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself". Simmons v. Roundup Funding, LLC, 622 F.3d 93, 96 (2nd Cir. 2010). Also see Burchalewski v. Wolpoff & Abramson, LLP, 2008 U.S. Dist. LEXIS 73625 at \*\*5-6, 2008 WL 4238933 at \*2 (W.D.N.Y. 2008) ("New York District Courts have generally concluded that there is *not* an independent cause of action under the FDCPA for the violation of a bankruptcy stay, and that such claims are precluded by the Bankruptcy Code"); Necci v. Universal Fidelity Corp., 297 B.R. 376, 379-381 (E.D.N.Y. 2003) (siding with the "majority view" and concluding that "the bankruptcy code precludes claims under the FDCPA when those claims are based upon violations of the bankruptcy stay").

Conversely, the U.S. Court of Appeals for the Seventh Circuit ("Seventh Circuit") has held that a debtor may pursue FDCPA claims based on a creditor's attempts to collect a debt in violation of the automatic stay or discharge injunction. The Seventh Circuit reasoned that a "demand for immediate payment while a debtor is in bankruptcy (or after the debt's discharge) is 'false' in the sense that it asserts that money is due, although, because of the automatic stay (11 U.S.C. § 362) or the discharge injunction (11 U.S.C. § 524), it is not. A debt collector's false statement is presumptively wrongful under the Fair Debt Collection Practices Act, see 15 U.S.C. § 1692e(2)(A), even if the speaker is ignorant of the truth; but a debt collector that exercises care to avoid making false statements has a defense under § 1692k(c)." Randolph v. IMBS, Inc., 368 F.3d 726, 728 (7th Cir. 2004). According to the Seventh Circuit, "[d]ebt collectors may not make false claims, period." Id. at 730. But compare with Simmons v. Roundup Funding, LLC, 622 F.3d at 95-96 ("Federal courts have consistently ruled that filing a proof of claim in bankruptcy court (even one that is somehow invalid) cannot constitute the sort of abusive debt collection practice proscribed by the FDCPA, and that such a filing therefore cannot serve as the basis for an FDCPA action."); Claudio v. LVNV Funding, LLC (In re Claudio), 463 B.R. 190, 197 (Bankr. D. Mass. 2012) ("the FDCPA is inapplicable to the filing of proofs of claims in bankruptcy cases").

In Crawford v. LVNV Funding, LLC, 758 F.3d 1254 (11th Cir. 2014), a creditor filed a proof of claim to participate in the Chapter 13 payment scheme of a stale debt that had become unenforceable under state law years before and hence, the debtors filed an adversary proceeding alleging that violations to the FDCPA. In reversing the U.S. Bankruptcy Court and District Court for the Middle District of Alabama, the U.S. Court of Appeals for the Eleventh Circuit concluded that the creditor's "filing of the proof of claim fell well within the ambit of a 'representation' or 'means' used in 'connection with the collection of any debt'" and that such action "violated the FDCPA's plain language". 758 F.3d at 1262-1263.

In Simon v. FIA Card Servs., N.A., *supra*, a law firm, Weinstein & Riley, P.S. ("Weinstein & Riley"), sent a letter and a notice on behalf of FIA Card Services, N.A. ("FIA"),

to the plaintiffs-debtors through their bankruptcy counsel stating that FIA was considering filing an adversary proceeding under 11 U.S.C. § 523 to challenge the dischargeability of the credit-card debt and included an offer to forego an adversary proceeding if the plaintiffs stipulated that the credit-card debt was nondischargeable or if they agreed to pay a reduced amount to settle the debt.  The letter also stated that a Fed. R. Bankr. P. 2004 examination to gather information for filing an adversary proceeding had been scheduled, but that Weinstein & Riley was open to "discuss[ing] with your client whether the matter can be resolved without conducting the examination and/or to reschedule it for an informal telephone conference at a mutually agreeable time prior to the bar date."  Id. at 263.  The letter also set out additional information about how to challenge the debt "[i]n the event that this letter is governed by the FDCPA."  Id. The plaintiffs-debtors filed a motion in the Bankruptcy Court to quash the Fed. R. Bankr. P. 2004 examination notices on the ground that they failed to comply with the Fed. R. Bankr. P. 9016 and Fed. R. Civ. P. 45 subpoena requirements and filed an adversary proceeding asserting FDCPA claims against FIA and Weinstein & Riley.  The Bankruptcy Court quashed the Fed. R. Bankr. P. 2004 examination notices and ruled that it lacked subject-matter jurisdiction over the FDCPA claims and dismissed them without prejudice.  The plaintiffs then sued FIA and its attorneys, Weinstein & Riley, in the U.S. District Court for the District of New Jersey alleging that the letters and subpoenas violated the FDCPA prohibition on false, deceptive, and misleading debt-collection practices under 15 U.S.C. § 1692e(5), (11), and (13).   The defendants moved to dismiss on three grounds: (1) the FDCPA claim was precluded by the Bankruptcy Court's earlier dismissal of the adversary proceeding; (2) the complaint did not state a claim; and (3) the allegations from which the FDCPA claims arose were governed exclusively by the Bankruptcy Code.  The District Court dismissed the FDCPA suit with prejudice, stating that the "FDCPA claims [were] precluded by the Bankruptcy Code" and that the complaint "does not appear to set forth sufficient factual allegations to state a claim" under the FDCPA.  Simon v. FIA Card Servs., N.A., 2012 U.S. Dist. LEXIS 98225 at **8-12, 2012 WL 2891080 at *4 (D.N.J. 2012).  On appeal, the Third Circuit reversed and ruled as follows:

We will follow the Seventh Circuit's approach [in Randolph v. IMBS, Inc., *supra*]. When, as here, FDCPA claims arise from communications a debt collector sends a bankruptcy debtor in a pending bankruptcy proceeding, and the communications are alleged to violate the Bankruptcy Code or Rules, there is no categorical preclusion of the FDCPA claims. When, as is also the case here, the FDCPA claim arises from communications sent in a pending bankruptcy proceeding and there is no allegation that the communications violate the Code or Rules, there is even less reason for categorical preclusion. The proper inquiry for both circumstances is whether the FDCPA claim raises a direct conflict between the Code or Rules and the FDCPA, or whether both can be enforced.

This approach is consistent with [U.S.] Supreme Court precedents recognizing a presumption against the implied repeal of one federal statute by another. "'[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Intern., Inc., 534 U.S. 124, 143-44, 122 S. Ct. 593, 151 L. Ed. 2d 508 (2001) (quoting Morton v. Mancari, 417 U.S. 535, 551, 94 S. Ct. 2474, 41 L. Ed. 2d 290 (1974)).

Simon v. FIA Card Servs., N.A., 732 F.3d at 274.

In the instant case, the court finds that remedies under the FDCPA are available in bankruptcy when Debtors have no other remedies for damages under the Bankruptcy Code for the same actions. The court follows the reasoning in Simmons v. Roundup Funding, LLC: "[t]he FDCPA is designed to protect defenseless debtors and to give them remedies against abuse by creditors … [t]here is no need to protect debtors who are already under the protection of the bankruptcy court, and there is no need to supplement the remedies afforded by bankruptcy itself." 622 F.3d at 96. Therefore, the court concludes that the remedies afforded by the Bankruptcy Code to recover damages under 11 U.S.C. § 362(k)(1) preclude further damages under the FDCPA. In reaching such conclusion, the court weighs that the Plaintiffs' allegations under the FDCPA were the same as the ones averred for the violation of the automatic stay. Simply put, without the violation of the automatic stay, the Plaintiffs would not have an FDCPA claim. Hence, allowing such FDCPA remedies in addition to those in 11 U.S.C. § 362(k) would allow Plaintiffs to obtain damages from two different sources for the same violation.

Conclusion

For the reasons stated above, the court partially grants the Plaintiffs' *Motion for Partial Summary Judgment* (Docket No. 15) to determine the Defendant's liability for the willful violation of the automatic stay under 11 U.S.C. § 362(k)(1) for actual damages and attorneys' fees. The Plaintiffs' request to determine the Defendant's liability for punitive damages and damages under the FDCPA is hereby denied.

SO ORDERED.

Partial judgment will be entered accordingly.

In San Juan, Puerto Rico, this 6th day of April, 2015.

Enrique S. Lamoutte
United States Bankruptcy Judge